Louis Kushner v. Commissioner.
Kushner v. Commissioner
Docket No. 3077-69 SC.
United States Tax Court
T.C. Memo 1970-197; 1970 Tax Ct. Memo LEXIS 164; 29 T.C.M. (CCH) 881; T.C.M. (RIA) 70197; July 15, 1970, Filed *164 The petitioner showed that he contributed more than one-half of the total support of his minor children, who were in the custody of their mother. The total support figurewas established within a narrow range. Held, he is entitled to dependency exemptions for his children. Louis Kushner, pro se, 17 County St., Seekonk, Mass.Alan I. Weinberg, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency of $284.57 in the petitioner's 1966 income tax. The issue for decision is whether the petitioner is entitled to dependency exemptions for his daughters, Kim A. and Karole J. Kushner, who were in the custody of their mother during the year in question. Findings of Fact Some of *165 the facts were stipulated, and those facts are so found. The petitioner, Louis Kushner, maintained his legal residence in Seekonk, Massachusetts, at the time the petition was filed in this case. He filed his 1966 individual Federal income tax return with the district director of internal revenue, Boston, Massachusetts. Kim A. and Karole J. Kushner are the twin daughters of the petitioner and Joan C. Kushner. Kim and Karole were born on September 29, 1963. The petitioner and Mrs. Kushner took part in a marriage ceremony in Seabrook, New Hampshire, on October 17, 1962. On the marriage record, the petitioner represented himself as having been "single," and Mrs. Kushner represented herself as having been "divorced." However, Mrs. Kushner was then still 882 married to Thomas William Devereaux, Jr. She filed for divorce from Mr. Devereaux in Massachusetts on November 13, 1962, and a decree nisi of divorce was granted on January 3, 1963. The petitioner and Mrs. Kushner separated in October 1965. The petitioner obtained a decree nisi of divorce from her on October 17, 1966. The decree provided that Mrs. Kushner was to have custody of the children, and that the petitioner pay Mrs. *166 Kushner $25 per week from the date of the decree for child support. From the time of the separation until October 1966, the two children lived with their mother in Taunton, Massachusetts, in the same apartment where they had lived prior to the separation. In October 1966, the children and their mother moved to Cranston, Rhode Island. The children were in the custody of their mother during all of 1966. However, the petitioner had the children for about 20 days at various times; the children's maternal grandparents, Mr. and Mrs. Lozinski, had the children for about 84 days of the year, including various weekend and holiday visits and a 2-week period in the summer; and Mrs. Lozinski's mother, Mrs. Catherine Green, kept the children for a 2-week period while Mrs. Kushner was recovering from injuries suffered in an automobile accident. During 1966, the petitioner paid $1,230.44 directly to Mrs. Kushner for the support of the children. Of this, $965.44 was paid prior to the date of their divorce decree and $265.00 thereafter. In addition, the petitioner paid $77.10 for clothing and toys, and $3.97 for medication, for the children. Also, he paid $20.00 to Mrs. Green to defray the latter's *167 expenses of caring for the children while their mother was incapacitated. He spent $7.10 for food for the children, which food was contributed to the household of the children and their mother. He spent approximately $100.00 for the children's support during the 20 days that they were with him. The total costs of maintaining the apartments in Taunton and Cranston where the children and their mother lived during 1966 were as follows: Rent - Taunton
$ 585.00
Ren' - Cranston
150.00
Heat - Taunton
135.00
Heat - Cranston
60.00
Electricity - Taunton
90.00
Phone - Taunton
$ 45.00
Gas (cooking) - Taunton 45.00
Total $1,110.00 In addition, there were electric and gas bills of undetermined amounts paid with respect to the Cranston apartment. Mrs. Kushner spent an average of $10 per month on clothing for the children during 1966; her parents, the Lozinskis, spent a like amount. In addition, the Lozinskis spent an additional $100 on presents for the children. The Lozinskis also paid $50 during 1966 toward the children's medical expenses. While in Cranston, the children had "a few shots" as treatment for colds, had their teeth cleaned, and Karole had one cavity *168 filled. These expenses were paid by the welfare department in Cranston, but the amount of them is unknown. Mrs. Kushner owned an automobile during the latter part of 1966. The automobile was used to some extent for the transportation of the children. The cost of food for the household consisting of the two children and Mrs. Kushner was about $100 per month. In addition, the Lozinskis paid an average of $5 extra per week for food for the children when they were with them. The Lozinskis also sustained additional expense for heat for their home on account of the children's presence there. Opinion The issue for decision is whether the petitioner is entitled to dependency exemptions for 1966 for his daughters, Kim A. and Karole J. Kushner, who were in the custody of their mother during that year. To be entitled to such exemptions, the petitioner must sustain the burden of proving that he furnished over one-half of each child's total support during that year. Sec. 152(a), Internal Revenue Code of 1954; sec. 1.152-1(a), Income Tax Regs.; Rose D. Seraydar, 50 T.C. 756, 760 (1968); Aaron F. Vance, 36 T.C. 547, 549 (1961); Rule 32, Tax *169 Court Rules of Practice. In the absence of evidence to the contrary, it is presumed that his contributions were allocated equally for the support of each child. Ollie J. Kotlowski, 10 T.C. 533, 536 (1948). The petitioner must show the amount of support furnished by him and that such 883 support constituted more than one-half of the total support furnished each child. James E. Stafford, 46 T.C. 515 (1966); Aaron F. Vance, supra; Bernard C. Rivers, 33 T.C. 935 (1960). However, in some circumstances, it may not be necessary for the petitioner to prove the precise amount of the total support. He has carried his burden of proof, if he establishes the total support with sufficient definiteness so that the Court can conclude that the support furnished by him was more than one-half of the total. Commissioner v. Mendel, 351 F. 2d 580 (C.A. 4, 1965), revg. 41 T.C. 32 (1963); Theodore Milgroom, 31 T.C. 1256 (1959); Russell W. Boettiger, 31 T.C. 477 (1958); E. R. Cobb, Sr., 28 T.C. 595 (1957). See James E. Stafford, supra; Robert I. Brown, 48 T.C. 42 (1967); *170 Edward J. Pillis, 47 T.C. 707 (1967), affd. per curiam 390 F. 2d 659 (C.A. 4, 1968). The petitioner has successfully borne his burden of proof by establishing the support furnished by him, by proving most of the items of total support, and by showing that his contributions constituted more than one-half of the total. The evidence as to the total support of the children consisted of testimony of the petitioner and that of Mrs. Lozinski. Since Mrs. Kushner and the children spent most of the year in the same apartment in which they lived with the petitioner during most of 1965, he could provide fairly reliable testimony as to the costs of maintaining that apartment. Mrs. Lozinski, who together with her husband apparently also took the dependency exemption for the children for 1966, claimed to be familiar with the expenses of maintaining the children during that year. However, much of her testimony was confusing; many of her statements were inconsistent; and a number of her estimates appeared to be exaggerated. Accordingly, we have accepted her statements when they appeared to be supported by other testimony or were within the realm of reason, but we have found *171 many of her statements unconvincing. The total support of the two children included the following items: Lodging, including heat and utilities, excluding gas and electricity at Crans- ton
$ 740.00
Food consumed in their household
723.17
Clothing purchased by Mrs. Kushner
120.00
Clothing purchased by the Lozinskis
120.00
Clothing and toys purchased by the peti- tioner
$ 77.10
Presents purchased by the Lozinskis
100.00
Medical expenses paid by the Lozinskis
50.00
Medical expenses paid by the petitioner
3.97
The petitioner's payment to Mrs. Green for care of children
20.00
Amounts spent by the petitioner for the children when they were with him
100.00
The Lozinskis' expenses of feeding the children when they were with them 210.00
Total $2,264.24 The figure for lodging was reached by taking two-thirds of the total figure of $1,110.00. The figure for food consumed in the children's own household was reached by calculating that a monthly food bill of $100.00 is equivalent to a weekly food bill of $23.08, by multiplying that figure by 47 (allowing for the 2 weeks that the children spent in Mrs. Green's house and the 3 weeks - 2 in the summer and *172 1 at Christmas - that they spent at the Lozinskis' house), and by taking two-thirds of that figure. With respect to the Lozinskis' expenses for feeding the children, we have accepted Mrs. Lozinski's testimony that their weekly food bill was $5.00 higher than usual when the children were with them; although it was not clarified, it appears that this increment was based on a week during which the children were visiting for the weekend only. Figuring that a weekend includes 2 full days, we estimate that it cost the Lozinskis $2.50 per day to feed the two children, and $210.00 to feed them over the total number of days (84) that they were with them. The following items for which we cannot estimate an amount were included in the children's support: Gas and electricity costs at Cranston (2/3) Mrs. Kushner's auto expenses to extent allocable to children Medical and dental costs paid by welfare department in Cranston Extra heat costs incurred by the Lozinskis while children were with them Also, there was no evidence at all with respect to costs incurred in the move from Taunton to Cranston. We have found that the petitioner's contributions to the support of both children during *173 1966 totaled $1,438.61. The respondent argues that some or all of the money paid by the petitioner to Mrs. Kushner prior to the date of their divorce decree should be classified as alimony rather than child support. However, the petitioner's payments were made pursuant to an 884 understanding arranged by his attorney with Mrs. Kushner that such payments were made for the support of the children, and the divorce decree continued such an arrangement. The respondent has provided no legal authority indicating that such an understanding is ineffective, and accordingly, we have found that the payments by the petitioner were entirely for the support of the children. The petitioner is entitled to the dependency exemptions for the two children if their total support was less than twice the amount provided by him, or $2,877.22. Although we have been unable to find the amounts of some items in the total support of the children, we are convinced that, in view of the standard of living of the children, those amounts are less than the difference between the amount of the total support that we could find, $2,264.24, and $2,877.22. In addition to support furnished by the petitioner, the children *174 also received assistance from their mother, from the Lozinskis, and from the welfare department in Cranston. The Lozinskis apparently furnished substantial support for the children, but it is altogether clear that they did not provide nearly as much as the petitioner. Despite the support provided by the other sources, it appears to us that the petitioner supplied more than one-half of the support for the children. To reflect the petitioner's concession on another issue, Decision will be entered under Rule 50.